# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **WYNDHAM VACATION** | ) | |
| **RESORTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **WESLEY FINANCIAL GROUP, LLC,** | ) | **JURY DEMAND** |
| **CHARLES MCDOWELL, III,** | ) | |
| **and JOHN and Jane DOES 1-10** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT

COMES NOW, Plaintiff, Wyndham Vacation Resorts, Inc. ("Wyndham"), hereby files its Verified Complaint against Defendants, Wesley Financial Group, LLC ("Wesley"), Charles McDowell, III, and John and Jane Does 1-10, and states as follows:

This action is brought pursuant to the Tennessee Uniform Trade Secrets Act, Tennessee's law of Intentional Interference with Current and Prospective Business Relations, Breach of Contract, Theft and Misappropriation, Breach of Fiduciary Duty, Breach of Continuing Duty of Loyalty, Intentional Interference with Contractual Relations, Procurement of Breach of Contract, Unfair Competition, the Tennessee Consumer Protection Act, Tennessee's law on the Unauthorized Practice of Law, and Civil Conspiracy.

## THE PARTIES

1.      Wyndham is a Delaware corporation whose principal place of business is 8427 South Park Circle, Orlando, Florida 32819. Wyndham markets and sells vacation ownership

interests, provides property management services to property owners' associations, and develops and acquires vacation ownership resorts.

2.      Upon information and belief, Wesley is a single member Tennessee Limited Liability Company owned by Defendant McDowell. Wesley's primary place of business is 2738 North Mt. Juliet Road; Mt. Juliet, Tennessee 37122. Wesley can be served through its registered agent, Wayne Halper, at 1301 16th Avenue South; Nashville, Tennessee 37212-2923.

3.      Upon information and belief, McDowell is a citizen and resident of Tennessee. McDowell is a former employee of Wyndham. Upon information and belief, McDowell holds himself out as the owner, President, and CEO of Wesley and may be served at his home 621 Lakeview Circle, Mount Juliet, Tennessee 37122.

4.      Upon information and belief, John and Jane Does 1-10 are citizens and residents of Tennessee and this Judicial District.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is based upon 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) and (2) as all Defendants reside in the same state and in this judicial district and as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

7.      Wyndham develops, finances, manages, and sells timeshare properties. It is the world's largest vacation timeshare company, as measured by the number of vacation ownership resorts, individual vacation ownership units, and owners of vacation ownership interests.

Wyndham and its affiliated resort companies currently have more than 800,000 owner families around the world.

8.     Wyndham is supported by approximately 13,300 employees globally and its more than 160 vacation ownership resorts throughout the United States, Canada, Mexico, the Caribbean, and the South Pacific represent approximately 20,500 individual vacation ownership units.  Wyndham also offers its owners the opportunity to vacation at thousands of resorts worldwide through its international exchange affiliations.

9.     Wyndham Owners purchase timeshare properties through Wyndham.  These individuals or families then participate in a points system which allows them the benefits of timeshare ownership combined with the ability to travel to various resorts and destinations throughout the world.

10.     A large percentage of Wyndham's business is repeat business from timeshare owners, including existing owners purchasing upgrades and owners referring new buyers.  Therefore, customer relations and goodwill are vital to Wyndham's success.

11.     In connection with its business, Wyndham has expended substantial time, labor, and money to research and develop the following: skills, methods, techniques, plans, programs, processes, data, forms and policies which, singularly and collectively, constitute trade secrets and confidential and proprietary information of Wyndham.  This trade secret and confidential and proprietary information includes, but is not limited to: owner lists, owner contacts and other owner information, sales and marketing methods, strategies, practices and information, financial information, cost and pricing information, and confidential employee information.

3

12.     In particular, Wyndham spends a significant amount of time and resources developing and maintaining its owner base and it emphasizes owner relations and customer service.

13.     Wyndham's trade secret and confidential and proprietary information is neither available to nor known by the general public or Wyndham's competitors.  Wyndham does not publish or sell its trade secret or confidential and proprietary information and such information is not available to the general public.  Wyndham has taken substantial measures and exercised significant due diligence in preventing its trade secret and confidential and proprietary information from being available to persons other than those selected by Wyndham.  Wyndham imposes significant restrictions on the number of persons who have access to Wyndham's trade secret and confidential and proprietary information.  The persons selected by Wyndham to receive such confidential and proprietary information are obligated, either under contract or by virtue of their fiduciary duty to Wyndham or an affiliate, to have access to this information on a confidential basis in order to further and protect Wyndham's business.

14.     Wyndham requires that all trade secrets and confidential and proprietary materials and copies thereof, be returned upon its employees' termination, whether voluntary or involuntary.

15.     McDowell was employed at Wyndham's Nashville resort as a Salesperson from on or about November 16, 2007 until October 31, 2008.  In his capacity as a Sales Representative, McDowell had access to and gained knowledge of Wyndham's confidential and proprietary information related to its business.

16.     By reason of his employment with Wyndham, McDowell became familiar with, and had access to, certain confidential and proprietary information, including but not limited to:

owner lists, owner contacts, and other information, marketing and sales methods, strategies, policies, practices and information, cost and pricing information, financial records, computer records, and employee records. McDowell developed relationships with Wyndham's timeshare owners and employees that were important in furthering the goodwill and reputation of Wyndham. All the foregoing information and business records are owned by Wyndham and treated by Wyndham as proprietary and confidential information, which would only be acquired or learned through employment at Wyndham.

17.     Upon information and belief, Does 1-10 most all of whom are former Wyndham sales employees who, by virtue of their positions, had access to and gained the same knowledge of Wyndham's confidential and proprietary information related to its business.

18.     In connection with his employment with Wyndham, McDowell agreed to abide by the Business Principles of Wyndham's ultimate parent company, Wyndham Worldwide Corporation. Attached hereto as Exhibit A. These Business Principles apply to all employees of any and all subsidiaries and affiliates of Wyndham Worldwide, Corporation, including Wyndham. The Business Principles, among other things, require employees take precautions to protect against the unlawful and inappropriate use or disclosure of Wyndham's confidential and proprietary information during employment and thereafter. The description of confidential information in the Business Principles includes, by way of example: client lists (including phone numbers and postal and email addresses) and/or client or customer contact information; marketing and pricing plans, cost structures or strategies, and compilations which contain or otherwise reflect business information.

19.     Upon information and belief, Does 1-10 agreed to abide by the same Business Principles described above.

20. On or about November 16, 2007, McDowell executed a Salesperson Agreement, attached as Exhibit B, which placed contractual restrictions on his use of Wyndham's trade secret, confidential and proprietary data and information. Additionally, this Salesperson Agreement included covenants not to solicit Wyndham employees, clients, owners, prospects, or Wyndham's goods or services providers.

21. Paragraph 6 of McDowell's Salesperson Agreement states, in pertinent part:

Salesperson agrees and acknowledges that, as an employee of [Wyndham], Salesperson may be given or be privy to certain valuable, proprietary or confidential information, including, but not limited to sales, marketing, and training material and information, Product pricing data and strategies, and prospect or purchaser lists. Except in the Normal course of Salesperson's duties hereunder, Salesperson shall not, while employed by [Wyndham] or at any time thereafter, copy or disclose any such information to any person or entity for any reason or purpose, nor shall Salesperson utilize such information. Salesperson agrees that all such information, including any copies thereof, is the property of [Wyndham] and that immediately upon termination of Salesperson's employment with [Wyndham] all such property, information and data, including any copies, recordations (whether in written or electronic form) or abstracts thereof, shall be returned to [Wyndham].

Because [Wyndham's] damages from any violation of this paragraph would be impracticable and extremely difficult to determine, the liquidated amount of damages presumed to be sustained from any such breach will be $15,000. That sum is agreed on as compensation for the injury suffered by [Wyndham], and not as a penalty. In addition, [Wyndham] shall be entitled to injunctive relief as well as any remedy available at law, including reasonable attorney's fees incurred in obtaining such relief.

22. Further, the Salesperson Agreement requires McDowell to "protect, defend, and indemnify [Wyndham] for all losses, costs, liabilities, claims (including costs of investigation, refunds, fines, damages or expenses, including attorneys' fees and expenses" incurred in connection with any "act or omission" by them "(a) in violation of the Contract Standards or any other provision of [the Salesperson] Agreement, including but not limited to Salesperson's obligations under Paragraphs 6, 8, 9, and 10: (b) in violation of the Conflict of Interest States; (c)

which constitutes a material misrepresentation by Salesperson and/or (d) which constitutes any violation of law."

23.     Upon information and belief, Does 1-10 executed the same or substantially similar Salesperson Agreement as the Salesperson Agreement executed by McDowell.

24.     McDowell and Does 1-10's actions related to the Wesley, as described herein, have violated both Wyndham's Business Principles and their Salesperson Agreements.

25.     According to its website, as of May 25, 2012, Wesley claims to "assist[] timeshare buyers who feel they have been misled or had deceitful sales tactics used against them during the purchase of their timeshare. Attached as Exhibit C. Purportedly, "[Wesley] helps those who no longer want their timeshare to transfer their ownership out of their name, in turn removing them from any communication with the timeshare company."

26.     Wesley's website further states: "Owner and founder, Chuck McDowell, was the CEO of the very first timeshare consulting company and has helped thousands cancel their timeshares and protect their legal rights." The truth is McDowell has been engaged in wrongful conduct to the detriment of Wyndham since leaving Wyndham's employ in October 2008 and has had to move from company to company as Wyndham has sought to enforce its legal rights against him and his companies.

27.     In reality, upon information and belief, Wesley, McDowell, and Wesley's employees and agents, including Does 1-10, are engaged in exploiting Wyndham's trade secret and confidential and proprietary information in order to wrongfully interfere with Wyndham's business relationships and contractual rights with its Owners. Defendants' actions are intended, by design, to deceive Wyndham Owners. These actions are designed to have Wyndham Owners breach their contracts with Wyndham.

28.     Wesley engages in these activities in order to receive fees and other consideration from Wyndham Owners in exchange for advice and/or representation on how to get Wyndham Owners out of their contracts.

29.     Upon information and belief, Defendants are in possession of Wyndham customer lists and sales sheets and are wrongfully using that trade secret and confidential and proprietary information to contact Wyndham Owners either to rescind or sell their timeshare contracts.

30.     McDowell as well as others associated with Wesley, including Does 1-10, attempt to pressure Wyndham Owners into breaching their timeshare contracts by, among other things, alleging that Wyndham sales employees have engaged in wrongful sales tactics.  However, as former Wyndham employees McDowell and Does 1-10 know, Wyndham does not tolerate its employees engaging in wrongful sale tactics.

31.     Wyndham trained McDowell and, upon information and belief, Does 1-10 extensively regarding its Sales Compliance Policies.  Wyndham developed the Sales Compliance Policies to provide Salespersons with an understanding of Wyndham's expectations and procedures.  Because the timeshare sales industry is heavily regulated, Wyndham stresses the importance of adhering to these policies at all times.  As such, when he was hired, Wyndham supplied McDowell and Does 1-10 with a copy of its Sales Compliance Policy Manual, which identifies specific permitted and prohibited sales representations.  As is made clear in the Sales Compliance Policy Manual and Business Principles, Wyndham's success is reflected in the integrity of the company, its products, employees, and its strong customer relationships.  Based on this, Wyndham demands all its employees demonstrate the highest standards of honesty and integrity to maintain its customer and Owner relationships.  Wyndham strictly prohibits any

misrepresentations about Wyndham's products or services or the benefits of timeshare ownership.

32.     In order to advance its wrongful conduct, upon information and belief, Wesley's business operations use Wyndham's confidential and proprietary information which was obtained while McDowell and Does 1-10 were employed with Wyndham to contract parties to timeshare contracts with Wyndham.

33.     Further, upon information and belief, Wesley and McDowell are gathering confidential and proprietary information from current Wyndham employees.   Wesley and McDowell are aware that Wyndham employees are prohibited by contract from providing this information to them.  Wyndham employees have been approached by individuals who recently became Wyndham Owners to complain that they are receiving calls from companies asking if the Wyndham Owners would like to get out of their timeshare ownerships.  In some cases, the callers have been able to identify the Wyndham sales representative who sold the ownership. This information is kept confidential and could only be provided by a Wyndham employee or the Wyndham Owner.

34.     Once Wesley's employees and agents contact Wyndham's Owners, those employees and agents may identify themselves as Wyndham employees or may otherwise cause Wyndham's Owners to believe they are affiliated with Wyndham.

35.     After trying to create the impression to the Wyndham Owner that the Wesley caller is somehow affiliated with Wyndham, Wesley's employees and agents attempt to induce Wyndham Owners to pay a fee in order for Wesley to assist Wyndham Owners in breaching their contractual obligations to Wyndham.

9

36. For instance, on or about March 21, 2012, an individual who is both a Wyndham employee and a Wyndham Owner received a phone call from a person who identified himself as "Steven" from "Wesley Financial in Nashville." During this call, Steven stated that there had been serious allegations of wrongdoing made against Wyndham regarding how Wyndham gets its Owners to upgrade their ownership packages. Steven stated that he was investigating those allegations. Steven then stated the allegations concerned "high pressure" sales tactics and "serious misrepresentations" during the sales process. Steven asked the Owner whether she experienced that when she went through the sales process.

37. On or about May 15, 2012, the same Owner received a voicemail from a person identifying himself as "Brian Davis" from Wesley. The voicemail stated that Mr. Davis was investigating misrepresentations made by Wyndham during its sales process.

38. During Spring 2012, another Wyndham Owner was contacted by a male caller identifying himself as being with Wesley Management Company. The caller asked about a recent sale presentation the Wyndham Owner had attended. The caller asked if Wyndham had used heavy-handed sales tactics or had pressured him to buy points. The caller was very pushy and kept pressing the Wyndham Owner for more and more information about his ownership.

39. Around the beginning of 2012, another Wyndham Owner traveled to California to stay at a Wyndham resort. Not long after the Wyndham owner returned from his trip, he was contacted by a female caller representing herself as being from Wesley. The caller said she could take care of and help him with any problems he may be experiencing with his Wyndham ownership.

40.     A few weeks later, the same Wyndham Owner was contacted by a male caller claiming to be from Wesley. The Wyndham Owner's conversation with the male caller was very similar to his prior conversation with the female caller from Wesley.

41.     On or about May 5, 2012, another Wyndham Owner received a voicemail from an individual at Wesley. The female caller said she needed to speak with the Wyndham Owner as soon as possible about his Wyndham account. The caller stated she was concerned that Wyndham was not treating him fairly. The Wyndham Owner returned the call and spoke with a lady named Kate Destafano. Ms. Destafano asked the Wyndham Owner whether he was ever told that Wyndham's maintenance fees would never increase. Ms. Destafano told the Wyndham Owner that maintenance fees can increase greatly over time and could significantly decrease his chances of ever selling his ownership. The tone and manner of the call lead the Wyndham Owner to believe Ms. Destafano was attempting to paint Wyndham in a negative light so that the Wyndham Owner would be induced into breaching his contract with Wyndham.

42.     Other Wyndham Owners have reported that Wesley's employees or agents have been contacting them.

43.     Upon information and belief, in violation of the terms of their Salesperson Agreements, McDowell and Does 1-10, individually, and on behalf of Wesley, have used and continue to use the confidential and proprietary information they were privy to as employees of Wyndham to further the business of Wesley and to the detriment of Wyndham, by making these calls and inducing others to make these calls.

44.     Additionally, upon information and belief, Defendants have engaged in this same type of wrongful behavior by contacting Wyndham Owners via the Internet and by e-mail.

11

45.     Upon information and belief, McDowell, individually, and on behalf of Wesley, has actively recruited current and former Wyndham employees to work for Wesley. Upon information and belief these former Wyndham employees include, but are not limited to George Patrick Howell, Zachariah Parker, and George Anderson.

46.     Further, upon information and belief, Wesley's employees and agents, including McDowell and Does 1-10, are engaged in giving individuals legal advice, providing legal counsel to Wyndham Owners about how to purportedly break their binding contracts, and by writing advocacy letters in an attempt to breach Wyndham Owners' contracts.

47.     For instance, Wesley's website lists what it purports to be the rescission periods for 39 states. Attached as Exhibit D. Wesley's website purportedly offers a "FREE Report" on "Your Legal Rights as a Timeshare Owner." *See* Ex. D. Additionally, upon information and belief, Wesley's employees give legal advice regarding sales tactics, consumer protection statutes, and contract law to prospective clients. The individuals who engage in this behavior are not licensed to practice law. Additionally, Wesley is not a law firm authorized to conduct legal work in the state of Tennessee and is owned and controlled by McDowell, who is not licensed to practice law.

48.     On or about April 12, 2012, Wyndham sent a cease and desist letter, attached hereto as Exhibit E, to Wesley and McDowell. That letter stated:

> It recently came to Wyndham's attention that . . . [Wesley] has been contacting Owners and attempting to induce them to breach their contractual agreements with Wyndham and promising them that it can relieve them from their contractual obligations to Wyndham. In addition, it is Wyndham's understanding that [Wesley] is contacting Owners under the guise that the customer had previously reported a complaint about their timeshare knowing full well that this was not true.
>
> Please be aware that any information regarding [Wyndham] Owners, including customer lists, contact information, and account information, is highly confidential and the proprietary information of Wyndham. Your use of this

proprietary information is in violation of you[r] employment agreement and applicable law . . . . As a result, Wyndham hereby demands that [Wesley] immediately cease and desist from contacting any [Wyndham] Owners utilizing confidential and[/]or proprietary information belonging to Wyndham and/or tortuously interfering with Wyndham's contractual relationships with its Owners.

49.     Since receiving this letter, upon information and belief, Wesley and McDowell have continued their wrongful activities. This letter was not the first time that McDowell has been informed the type of behavior he is engaged in is wrongful and unlawful.

50.     Following the termination of his employment with Wyndham, in 2008, McDowell was employed by Timeshare Advocacy International ("TAI"). TAI is a company purportedly engaged in offering assistance to timeshare owners in cancelling timeshare contracts. In reality, TAI is, among other things, engaged in wrongfully exploiting Wyndham's trade secret and confidential and proprietary information to interfere with Wyndham's business relations and binding contracts.

51.     On November 1, 2010, Wyndham filed Case Number 3:10-cv-01028 in the United States District Court for the Middle District of Tennessee against TAI, McDowell, and another former Wyndham employee, Sean Austin. Complaint available at DE 1 in Case No. 3:10-cv-01028. Wyndham has alleged that TAI and McDowell engaged in the same or similar conduct and business practices as alleged herein. That case is still pending.

52.     On November 2, 2010, Wyndham filed an Emergency Motion for a Temporary Restraining Order to prohibit the defendants including McDowell from engaging in wrongful business practices as alleged in that action. On November 3, 2010, Judge Haynes issued the requested temporary restraining order.

53.     On November 17, 2010, the Court entered an Agreed Order Regarding Preliminary Injunction and Setting Initial Case Management Conference. That Order stated, in pertinent part, that defendants, including McDowell were prohibited from the: "Continuing . . .

13

misappropriation of Wyndham's trade secrets and confidential information;" "[u]sing or disclosing any trade secrets, confidential information, or proprietary information of Wyndham for any purpose." The Order attached hereto as Exhibit F.

54.     During the course of that suit, McDowell left TAI and joined Vacation Owners Group, LLC ("VOG"). Like TAI and Wesley, VOG is a company allegedly involved in providing assistance to timeshare owners. However, like TAI and Wesley, VOG has been, among other things, actively involved in misappropriating the trade secret and confidential information of Wyndham and using that information to wrongfully interfere with Wyndham's business.

55.     On August 25, 2011, Wyndham filed Case Number 11-1174-IV in Davidson County Chancery Court against VOG, McDowell, and other former Wyndham employees, Lee Acker, George Anderson, and Curt Huckaba. Complaint attached hereto as Exhibit G. Wyndham has alleged that VOG and McDowell engaged in the same or similar conduct and business practices as alleged herein. That case is also still pending.

56.     VOG's operations began in New Jersey and in relation to such operations, Wyndham brought suit against, among other parties, the founder of VOG, Adam Lacerda. That case is still pending. Upon information and belief, Case Number 12-1028 in the United States District Court for the District of New Jersey is a criminal case against a number of individuals affiliated with or in control of VOG in New Jersey, which alleges these individuals engaged in fraudulent business practices.

57.     On November 9, 2011, during the course of a deposition in the TAI suit, McDowell testified that he was in the process of forming Wesley. Deposition excerpt attached hereto as Exhibit H. McDowell testified he did not know what his plans were for Wesley, but

that he might engage in the "insurance/annuity business." On November 16, 2011, McDowell did in fact make an initial filing to setup Wesley. Upon information and belief, McDowell gave this testimony only in an attempt to conceal its true purpose and to avoid further litigation as McDowell has, in fact, used Wesley to engage in the wrongful behavior described herein, just as he has engaged in the same or similar wrongful behavior with TAI and VOG.

58.     Upon information and belief, McDowell has taken the wrongful tactics and procedures he employed at TAI and VOG and has implemented those procedures at Wesley, for the purpose of diverting business away from Wyndham.

59.     McDowell has continued to work with individuals associated with TAI and VOG. The registered agent for Wesley is Wayne Halper. Halper was formerly associated with TAI.

60.     Additionally, McDowell, individually, and on behalf of Wesley has continued the practices of TAI and VOG in hiring former Wyndham employees so that those employees can and will wrongfully exploit Wyndham's trade secret and confidential and proprietary information.

61.     Defendants actions in the face of these other pending civil cases and the injunction against McDowell demonstrates the Defendants are determined to continue to wrongfully compete with, attack, and interfere with Wyndham's business.

## CAUSES OF ACTION

### CLAIM I

### Violation of the Tennessee Uniform Trade Secrets Act

### TENN. CODE ANN. § 47-25-1701, *et seq.*

62.     Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 61 above, as though fully set forth herein.

63.     Under the Tennessee Uniform Trade Secrets Act ("TUTSA") and common law, this Court may enjoin the actual or threatened misappropriation of Wyndham's trade secrets as well as award money damages.

64.     Wyndham has developed information that is trade secret including, but not limited to, technical, nontechnical and financial data, formulas, patterns, compilations, programs, methods, techniques, processes, and plans that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other person who can obtain economic value from their disclosure or use.

65.     McDowell and Does 1-10 had access to and knowledge of this valuable information.

66.     Wyndham's confidential and proprietary information, including information relating to the sale and marketing of timeshares, is protected as trade secret under TUTSA, because: Wyndham uses this information, which is included in a compilation, in order to conduct business; Wyndham's confidential information derives significant independent economic value from not being publicly known and from not being generally known in Wyndham's trade or business; Wyndham's confidential information cannot be readily ascertained or derived from publicly available information; and, Wyndham takes reasonable efforts to maintain the confidentiality and secrecy of its confidential information including entering into confidentiality agreements with its employees and limiting access to that information.

67.     The trade secrets were communicated to McDowell and Does 1-10 while they were employed in a position of trust and confidence with Wyndham.

68.     Upon information and belief, Wesley and McDowell have intentionally used Wyndham's trade secrets for various improper purposes, including soliciting Wyndham's

customers and attempting to induce these customers to breach contractual agreements with Wyndham.

69.     Wyndham has suffered damages as a result of the misappropriation of trade secrets by its former employees and the use of such information by Defendants.

70.     Upon information and belief, the misappropriation and use of Wyndham's trade secrets was willful and malicious.

71.     Wyndham has no adequate remedy at law for Defendants' actions since the damages that Wyndham has suffered as a result of the use and divulgence of its trade secret information as well as the loss of its business expectancies are incapable of exact proof.

72.     Tennessee law explicitly states that injunctive relief is available based on a misappropriation of trade secret claim. TENN. CODE ANN. § 47-25-1703(a).

73.     Defendants will continue to use and misappropriate Wyndham's trade secrets and cause irreparable harm unless Defendants are permanently enjoined from such conduct. Accordingly, permanent injunction enjoining Defendants from continuing their actions is a necessary remedy if Wyndham is to obtain meaningful relief.

74.     Wyndham is entitled to have any misappropriated trade secret or confidential and proprietary information returned to its sole control.

75.     Defendants' misappropriation of Wyndham's information and data is the direct and proximate cause of reputational damage to Wyndham. Wyndham's entire business is built on its goodwill and integrity. The loss of goodwill and reputation is irreplaceable. The reputational harm caused by Defendants' wrongful actions is irreparable.

76.     Failure to obtain an injunction will cause additional irreparable harm.

77.    Granting an injunction will not cause harm to Defendants.  Defendants are not in lawful possession of trade secret and confidential and proprietary Wyndham information.

78.    Granting an injunction will not cause harm to third parties.  Instead, third parties will benefit from the granting of an injunction.  An injunction will prevent Defendants from continuing to deceive the public.

79.    Wyndham is likely to prevail on the merits of this claim.

80.    There is a strong public interest in preserving the security and confidentiality of trade secret information.  This policy is evidenced by the TUTSA.  Failure to protect trade secret information would cause great and widespread harm to the state and national economy.

81.    Defendants' actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

82.    Wyndham is also entitled to exemplary damages under the statute.

83.    Wyndham is entitled to reasonable attorneys' fees under the statute.

## CLAIM II

### Intentional Interference with Current and Prospective Business Relations

84.    Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 83 above, as though fully set forth herein.

85.    Wyndham has existing and prospective business relationships with third parties that were affected as a result of Defendants' actions.

86.    Defendants had actual and/or constructive knowledge of these relationships, expectancies, and opportunities.  McDowell and Does 1-10 had specific knowledge of certain of Wyndham's business relations and prospective business relations.

18

87.     Defendants' willful actions of contacting current Wyndham Owners in effort to persuade them to cease relationships with Wyndham constitutes intentional and wrongful interference with existing contracts, as well as potential future contracts, with third parties.

88.     Wyndham has suffered damages as a result of Defendants' wrongful, intentional and wrongful interference with business relations.

89.     Defendants' actions in this regard, directly and proximately, cause Wyndham significant harm, for which it is entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

90.     The interference with Wyndham's business relationships by Defendants was willful and malicious.

91.     Wyndham is entitled to punitive damages.

## CLAIM III

### Breach of Contract

92.     Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 91 above, as though fully set forth herein.

93.     McDowell and Does 1-10 were employed with Wyndham pursuant to an executed Salesperson Agreement.  McDowell and Does 1-10 breached their Salesperson Agreements by soliciting Wyndham employees, soliciting Wyndham Owners, and using confidential and proprietary information he obtained as an employee of Wyndham and disclosing such information to third parties, including Wesley, to the detriment of Wyndham.

94.     McDowell and Does 1-10's actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages, in an amount to be determined at trial.

19

95. Pursuant to the terms of the Salesperson Agreements, Wyndham is also entitled to liquidated damages in an amount to be determined at trial.

96. Additionally, pursuant to the Salesperson Agreements, Wyndham is entitled to indemnification for McDowell and Does 1-10's breaches of contract and is entitled to its reasonable attorneys' fees, costs, and expenses.

## CLAIM IV

### Theft and Misappropriation

97. Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 96 above, as though fully set forth herein.

98. McDowell and Does 1-10 retained, distributed and utilized Wyndham's confidential and proprietary information to benefit Wesley and themselves.

99. Upon information and belief, McDowell and Does 1-10 deceitfully and fraudulently retained Wyndham's information without the knowledge and consent of Wyndham and in violation of their Salesperson Agreements.

100. McDowell and Does 1-10 knowingly, intentionally, recklessly, dishonestly and negligently misused and misappropriated Wyndham's property for thier own personal gain, in promoting and conducting the operation of Wesley.

101. McDowell and Does 1-10 purposefully and wrongfully utilized Wyndham's confidential and proprietary information to support and personally profit from Wesley.

102. McDowell and Does 1-10 actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages from McDowell and Does 1-10, jointly and severally, in an amount to be determined at trial.

**Breach of Fiduciary Duty**

103.    Wyndham repeats and re-alleges each and every allegation set forth in paragraphs 1 through 102 as if set forth at length herein.

104.    McDowell and Does 1-10 owed a fiduciary duty of loyalty to Wyndham.

105.    McDowell and Does 1-10 solicited Wyndham employees, solicited Wyndham owners, and disseminated confidential and proprietary information disclosed to them by Wyndham. In conducting these activities, McDowell and Does 1-10 breached thier fiduciary duty of loyalty owed to Wyndham.

106.    Such actions were not in good faith and were against Wyndham's business interests.

107.    McDowell and Does 1-10's actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages, jointly and severally, in an amount to be determined at trial.

108.    Upon information and belief, McDowell and Does 1-10 acted intentionally, willfully, and maliciously in taking these actions.

109.    Wyndham is entitled to punitive damages.

## CLAIM VI

**Breach of Continuing Duty of Loyalty**

110.    Wyndham repeats and re-alleges each and every allegation set forth in paragraphs 1 through 109 as if set forth at length herein.

111.    As a former employees, McDowell and Does 1-10 owe a duty of continuing loyalty to Wyndham.

112. After leaving the employee of Wyndham, McDowell and Does 1-10 used trade secret and confidential and proprietary Wyndham information, that was related to Wyndham's business, and that afforded Wesley, McDowell, and Does 1-10 an unfair competitive advantage in soliciting business for Wesley.

113. Upon information and belief, McDowell and Does 1-10 acted intentionally, willfully, and with malice in regards to these actions.

114. McDowell and Does 1-10 actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages from McDowell and Does 1-10, jointly and severally, in an amount to be determined at trial.

115. Wyndham is entitled to punitive damages.

## CLAIM VII

### Intentional Interference with Contractual Relations

116. Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 115 above, as though fully set forth herein.

117. Wyndham has valid and binding contracts with third parties, Wyndham Owners.

118. Defendants have knowledge of these contracts.

119. Upon information and belief, Defendants conspired with the intent to have Wyndham Owners violate the terms of their contracts.

120. Upon information and belief, as part of this conspiracy McDowell formed Wesley and joined with Does 1-10 and others with the intent to interfere with the contracts between Wyndham and Wyndham Owners.

121. Upon information and belief, as a direct and proximate result of this intentional interference, some Wyndham Owners were induced to breach and did breach their contracts.

122. Upon information and belief, Defendants acted intentionally, willfully, and maliciously by interfering with the Wyndham Owners' contracts.

123. Defendants' actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages against Defendants, jointly and severally, in an amount to be determined at trial.

124. Wyndham is entitled to punitive damages.

## CLAIM VIII

### Procurement of Breach of Contract

### TENN. CODE ANN. § 47-50-109

125. Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 124 above, as though fully set forth herein.

126. Wyndham has valid and binding contracts with third parties, Wyndham Owners.

127. Defendants had knowledge of these contracts.

128. Upon information and belief, Defendants conspired with the intent to have Wyndham Owners violate the terms of their contracts.

129. Upon information and belief, as part of this conspiracy McDowell formed Wesley and joined with Does 1-10 and others with the intent to interfere with the contracts between Wyndham and Wyndham Owners.

130. Upon information and belief, Defendants used inducement, persuasion, misrepresentation, or other means, to induce or procure the breach of violation, refusal or failure to perform Wyndham Owners' lawful contracts.

131. Upon information and belief, as a direct and proximate result of this procurement, some Wyndham Owners were induced to breach and did breach their contracts.

23

132.    Defendants' actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages against Defendants, jointly and severally, in an amount to be determined at trial.

133.    Wyndham is entitled to punitive damages.

134.    Wyndham is entitled to treble damages under the statute.

CLAIM IX

**Unfair Competition**

135.    Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 134 above, as though fully set forth herein.

136.    Upon information and belief, McDowell and Does 1-10, individually, and through Wesley have engaged in unfair competition in violation of Tennessee law by using Wyndham's confidential and proprietary information in violation of their fiduciary or contractual obligations.

137.    Upon information and belief, Wesley has engaged in unfair competition in violation of Tennessee law by using and/or intending to use Wyndham's confidential and proprietary information to solicit Wyndham Owners.

138.    Upon information and belief, Wesley has engaged in unfair competition in violation of Tennessee law by using and/or intending to use Wyndham's confidential and proprietary information to establish business strategies.

139.    Defendants' actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages against Defendants, jointly and severally, in an amount to be determined at trial.

140.    Wyndham is entitled to punitive damages.

## CLAIM X

### Violation of the Tennessee Consumer Protection Act

### TENN. CODE ANN. § 47-18-101, *et seq.*

141.    Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 140 above, as though fully set forth herein.

142.    Defendants' acts constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

143.    Upon information and belief, Defendants wrongfully acquired Wyndham's confidential and proprietary information for use in a competing enterprise through deceptive means.

144.    Upon information and belief, Wesley's subsequent use of Wyndham's confidential and proprietary information is intentional or with reckless disregard for the deceptive means through which the information was acquired.

145.    Defendants' actions and/or omissions constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

146.    Defendants' actions in creating the impression Defendants are a part of or affiliated with Wyndham constitutes unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

147.    Upon information and belief, Defendants acted in a concerted effort to take the actions which violated the Tennessee Consumer Protection Act.

148.    Defendants' actions in this regard caused an ascertainable loss of money and things of value.

25

149.    Defendants acted willfully and maliciously in violating the Tennessee Consumer Protection Act.

150.    Upon information and belief, Defendant's actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

151.    Wyndham is entitled to treble damages under the statute.

152.    Wyndham is entitled to reasonable attorneys' fees under the statute.

## CLAIM XI

### Unauthorized Practice of Law

### TENN. CODE ANN. § 23-3-103

153.    Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 152 above, as though fully set forth herein.

154.    McDowell and Does 1-10 act as advocates in a representative capacity for "customers" of Wesley who have been induced to breach their contract with Wyndham.

155.    Upon information and belief, McDowell, Does 1-10, and other Wesley employees and agents, who are not licensed to practice law, offer opinions on legal matters to customers of Wesley who have been induced to breach their contracts with Wyndham.

156.    Upon information and belief, McDowell, Does 1-10, and other Wesley employees and agents, who are not licensed to practice law, draft and/or write letters on behalf of customers of Wesley in an attempt to negotiate a legal release from those customers contractual obligations to Wyndham.

157.    Neither McDowell nor Does 1-10 are licensed to practice law in the State of Tennessee or in any other jurisdiction.

26

158.   McDowell and Does 1-10, individually, and on behalf of Wesley, have engaged in the unauthorized practice of law in violation of TENN. CODE ANN. § 23-3-103.

159.   The unauthorized practice of law may rightfully be enjoined as a public nuisance.

160.   Wyndham has no adequate remedy at law since the damages Wyndham has suffered as a result of Defendants' unauthorized practice of law are incapable of exact proof.

161.   Defendants have demonstrated that they will continue to engage in the unauthorized practice of law and cause irreparable harm unless they are preliminarily and permanently enjoined from such conduct.   According, a preliminary and permanent injunction enjoining Defendants from the unauthorized practice of law is a necessary remedy if Wyndham is to obtain meaningful relief.

162.   Wyndham will likely succeed on the merits of this claim.

163.   Any hardship accruing to Defendants would not outweigh the benefit to Wyndham in enjoining Defendants from engaging in the unauthorized practice of law.

164.   There is a strong public interest in prohibiting the unauthorized practice of law as it is a deceptive practice that robs the general public of effective advocacy.

165.   As a direct and proximate result of the actions of Defendants, individually, and on behalf of Wesley, in this regard, Wyndham has suffered harm for which it is entitled damages from Defendants, jointly and severally, in an amount to be determined at trial.

166.   Wyndham is entitled to treble damages under the statute.

## CLAIM XII

### Civil Conspiracy

167.   Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 166 above, as though fully set forth herein.

168.   In misappropriating Wyndham's trade secrets, Wesley, McDowell, and Does 1-10 have a common design and purpose of interfering with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreements.

169.   Wesley, McDowell, and Does 1-10 also have a common design and purpose to defame Wyndham in furtherance of their common design and purpose of interfering with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreements.

170.   Defendants have acted in concert with an unlawful purpose and with unlawful means to interfere with Wyndham's business relations and in inducing Wyndham's customer to breach their contractual agreements.

171.   Defendants took overt acts in furtherance of their unlawful conspiracy to interfere with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreements.

172.   Wyndham was damaged as a result of Defendants' unlawful conspiracy by its lost profits and goodwill.

173.   Defendants' actions in this regard, directly and proximately, caused Wyndham significant harm, for which it is entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

174.   Upon information and belief, Defendants acted willfully and with malice in taking these actions.

175.   Wyndham is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, WYNDHAM PRAYS FOR THE FOLLOWING RELIEF:

1.  Compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100,000.

2.  Liquidated damages against Defendants McDowell and Does 1-10 in an amount to be determined at trial, consistent with the terms of the Salesperson Agreements.

3.  Punitive and exemplary damages against Defendants, jointly and severally, in an amount to be determined at trial.

4.  An award of treble damages and reasonable attorneys' fees, costs and expenses to Wyndham.

5.  That this Court issue, after a hearing, a temporary restraining order and a preliminary injunction restraining and enjoining Defendants or their agents and/or employees:

   a.  Continuing Defendants' misappropriation of Wyndham's trade secret and confidential information and proprietary information in violation of Tennessee's Uniform Trade Secrets Act;

   b.  Using or disclosing any trade secret or confidential and proprietary information of Wyndham for any purpose;

   c.  Continuing to engage in the unauthorized practice of law by giving advice to timeshare owners regarding contracts, contract law, or contract rescission, or by drafting letters for or on behalf of timeshare owners in regard to those timeshare owners' contracts;

   d.  From contacting any Wyndham Owner in regard to Wyndham's business relationship with that Wyndham Owner; and,

   e.  Attempting to delete, modify, alter, or otherwise destroying, intentionally, inadvertently, or automatically, any potentially discoverable and/or relevant information located on any business operated servers, laptops or other computers, cellular phones, handheld devices (i.e., iPhones, Blackberries, or similar devices), personal computers, or any other devices capable of storing electronic information.

6.  An award of pre- and post- judgment interest on any award of damages to the fullest extent allowed by law.

7.  A trial by jury on all claims contained in this VERIFIED COMPLAINT.

Such other and further relief, both legal and equitable as may be proper.

Respectfully submitted,

KING & BALLOW

By: /s/R. Eddie Wayland
R. Eddie Wayland BPR 6045
Andrew W. Coffman BPR 27160
rew@kingballow.com
acoffman@kingballow.com

Attorneys for Wyndham Vacation Resorts, Inc.
1100 Union Street Plaza
315 Union Street
Suite 1100
Nashville, Tennessee 37201
Tel: (615) 259-3456
Fax: (615) 726-5417

**VERIFICATION**

I, _Jerry Prosise_, after first being duly sworn, do hereby make

oath and affirm that I am a _Vice President_ for Wyndham Vacation Resorts, Inc.; that the

claims made in the Verified Complaint are just; that the facts set forth in the Verified Complaint

are true and correct of my own knowledge or the knowledge available to Wyndham Vacation

Resorts, Inc., through its investigation and the books and records of Wyndham Vacation Resorts,

Inc., as stated, except those made as on information and belief, which are correct to the best of

my knowledge, information and belief.

STATE OF _TENNESSE_      )
                         )
COUNTY OF _Davidson_     )

   Before me, the undersigned authority, a Notary Public in and for said County and State,
personally appeared _Jerry Prosise_, with whom I am personally acquainted or
proven to me on the basis of satisfactory evidence, and who acknowledged that he/she executed
the foregoing in his/her capacity as _Vice President_ of Wyndham Vacation Resorts,
Inc., that he/she is authorized to execute this instrument in that capacity, and that he/she did so
for the purposes and considerations therein expressed and without undue influence or coercion
from any other party.

   SWORN TO AND SUBSCRIBED this _31_ day of May, 2012.



NOTARY PUBLIC
My Commission Expires: _11/4/2013_

31