WYNDHAM VACATION )
RESORTS, INC., )
                     )
      Plaintiff, )
                     )
v. )    No. 3:12-cv-559
                     )    Chief Judge Haynes
                     )
WESLEY FINANCIAL GROUP, LLC )
CHARLES MCDOWELL, III, and )
JOHN and JANES DOES 1-10, )
                     )
      Defendants. )

## MEMORANDUM

Plaintiff, Wyndham Vacation Resorts, Inc., a Delaware corporation, filed this action under

the 18 U.S.C. § 1332, the federal diversity statute, against the Defendants: Wesley Financial Group,

LLC, Charles McDowell, III, and John and Jane Does 1-10, all Tennessee citizens. Plaintiff asserts

claims under Tennessee law for intentional interference with current and prospective business

relations, breach of contract, theft and misappropriation, breach of fiduciary duty, breach of

continuing duty of loyalty, intentional interference with contractual relations, procurement of breach

of contract, unfair competition, civil conspiracy, and violations of the Tennessee Uniform Trade

Secrets Act, Tenn. Code Ann. § 47-25-1705, and Tennessee Consumer Protection Act, Tenn. Code

Ann. § 47-25-101 et seq.. Plaintiff seeks injunctive relief and damages.

Defendants responded with counterclaims that Plaintiff is liable under the Tennessee Uniform

Trade Secrets Act, the Tennessee Consumer Protection Act, and Tennessee law for defamation,

intentional interference with business relationships, procurement of breach of contract, and unfair

competition. Defendants also seek declaratory judgment and damages on their counterclaims.

Before the Court is Plaintiff's motion to dismiss (Docket Entry No. 68), contending, in sum, that each of Defendants' counterclaims for defamation, intentional interference with business relations, procurement of breach of contract, and unfair competition fail to state any claim upon which the Court may grant relief. In response, Defendants contend that they have properly pled these claims and are entitled to declaratory judgment on these counterclaims. (Docket Entry No. 70).

For the reasons set forth below, the Court concludes that Defendants' allegations in the pleadings sufficiently state claims for defamation, intentional interference with business relationships, procurement of breach of contract, bad faith under the uniform trade secrets act, and bad faith under the Tennessee Consumer Protection Act. Yet, the Court concludes that Defendant is not entitled to seek declaratory judgment and also fails to state a claim for unfair competition.

## A. Analysis of Counterclaims

According to Defendants' counterclaims, Defendant Charles McDowell owns Defendant Wesley Financial Group, LLC ("Wesley"), a single member Tennessee Limited Liability company. (Docket Entry No. 58 at ¶ 1). Plaintiff Wyndham develops, finances, manages, markets and sells timeshare properties. Id. at ¶ 4. Defendants allege that Wyndham uses a point system to sell levels of membership to first-time timeshare purchasers and to current timeshare owners. Id. at ¶ 5.

Prior to owning Wesley, McDowell was a salesperson for Wyndham at its Tennessee resort from approximately November 16, 2007 to October 31, 2008. Id. at ¶ 15. McDowell signed a Salesperson Agreement, restricting his use of Wyndham's confidential and proprietary information and prohibiting McDowell from soliciting Wyndham's employees or consumers for twelve months after termination of his employment. Id. at ¶ 16.

Defendants' counterclaim alleges that Plaintiff engaged in the following fraudulent sales practices:

> Wyndham trains its employees to use fraudulent methods and false promises to sell membership points in Wyndham properties. Specifically, Wyndham's agents make false statements regarding the urgency of the purchase, the potential expiration of the offer, the need to upgrade, and the existence of certain meetings that could have benefitted the potential and current timeshare owners. Such sales practices are referred to as 'The Game' among Wyndham managers and salespeople.

> For example, Wyndham salespeople falsely claim to consumers that those particular consumers would not be required to pay monthly maintenance fees on their timeshare interests if they had attended certain fictitious meetings that the consumers failed to attend. After putting on a show in which a purported manager is consulted, Wyndham salespeople ultimately offer to waive the monthly maintenance fees if the consumer purchases additional points to upgrade their membership.

> Wyndham salespeople are also trained to falsely claim that they will assist the timeshare owners in renting out their timeshare properties if the consumers purchase a membership or an increased level of points.

> Wyndham salespeople frequently host meetings that are attended by consumers wherein Wyndham salespeople falsely claim that sales pricing and discounted points are only available during that particular meeting. Wyndham salespeople are encouraged to communicate to the consumers that, if the consumers do not purchase the points being offered during that meeting, the offer will not become available again.

Id. at ¶¶ 6-7, 9, 11. Defendants also allege that such representations by Wyndham salespeople are "patently false and are solely used to fraudulently induce the consumers into purchasing unnecessary points" because all Wyndham owners realistically owe monthly maintenance fees. Id. at ¶ 8. Defendants further allege, however, that Wyndham "disclaim[s] any responsibility for those practices, [and] purports to employ a corporate integrity policy discouraging such practices." Id. at ¶ 14.

According to McDowell, without any prospective employment he left Wyndham "[a]fter

learning and engaging in Wyndham's unfair and deceptive sales practices, as instructed by his managers, for a little less than a year." Id. at ¶ 16. Defendants allege that upon leaving Wyndham's employment, McDowell did not take any documents or information with him. Id. at ¶ 20. More than a year after leaving Wyndham's employment, McDowell joined Timeshare Advocacy International, LLC ("TAI"). Id. at ¶ 21. A former fellow Wyndham employee started TAI to assist consumers who were allegedly fraudulently induced or unfairly pressured into investing in timeshare properties. Id.

In May 2011, McDowell left TAI and started Wesley. Id. at ¶ 22. Defendants allege that "Wesley is also a business that provides assistance to timeshare owners who have been defrauded or unfairly pressured by timeshare companies, including Wyndham, into investing in timeshare properties." Id. at ¶ 23. Defendants allege that "Wesley is either contacted by these consumers, or Wesley contacts these consumers based on information Wesley acquires from web-based businesses who consolidate public records information and sell it to consumer assistance agencies like Wesley." Id. at ¶ 24.

In support of their counterclaims, Defendants attached an email, sent from "Club Wyndham," that reads: "The following list represents entities that have generated a large volume of complaints and appear to be engaged in deceptive practices. Wesley Financial." (Docket Entry No. 59-2). John Hunt of Wyndham Vacation Resorts sent a letter to timeshare owners that states:

> As a valued owner with Wyndham Vacation Resorts, Inc. ("Wyndham"), Wyndham would like to update you on some recent events which have been brought to our attention over the last several months. We are sharing this information with our owners so that we can keep you informed on current events within our industry. Please be aware that certain Wyndham owners have been contacted by various individuals or groups – not affiliated or authorized by Wyndham – to offer 'consumer advocacy services' and other assistance regarding timeshare contract cancellations and/or transfers/resales. In at least one such instances, federal criminal charges are not pending against individual who are current or former officers, agents, and/or

employees of:

- Vacation Ownership Group a/k/a VO Group

- Resort Ownership Group d/b/a Resort Ownership Resolutions

(U.S. Department of Justice press release dated April 17, 2012; 'Sixteen Charged in Time Share Mortgage Fraud Scheme')

In addition, Wesley Financial Group and Vacation Select Services and Consulting, companies stated by former Vacation Ownership Group employees, may also be involved in improper cancellation assistance activities.

If you have received unsolicited contact from any individual or group offering contract cancellation or transfer assistance regarding your Wyndham ownership, you may become the victim of fraudulent and/or criminal activity. For additional information, we have enclosed a copy of a receive article titled 'Scambusters' that has been wifely featured in our owner magazine and other publications.

(Docket Entry No. 59-1).

Defendants allege that Wyndham is well aware its fraudulent sales practices, known as "The Game," that Wyndham salespeople use to garner profits from consumers. Wyndham managers and salespeople encourage "The Game." Id. at ¶ 13. In fact, "a common phrase used by Wyndham managers and salespeople is 'the bigger the show, the bigger the dough." Id.

### 1. Defamation Claim

For their defamation counterclaim, Defendants allege that Plaintiff engaged in the following acts:

34.      Wyndham published defamatory statements, specifically including but not limited to, the letter and e-mail blast that Wyndham sent to its timeshare owners regarding Wesley.

35.      Wyndham knew that the statements were false and defaming to Wesley or otherwise

acted with reckless disregard for the truth of the statements or with negligence in failing to ascertain the truth of the statements.

36.     Wyndham's actions constitute defamation.

37.     As a result of Wyndham's actions, Wesley has been damaged in an amount to be proven at trial.

(Docket Entry No. 58, Defendants' Amended Answer and Counterclaim).

### 2. Intentional Interference with Business Relationships Claim

For their counterclaim of intentional interference with business relationships, Defendants allege the following:

39.     Wesley has prospective or existing business relationships with certain timeshare owners of Wyndham.

40.     Wyndham has knowledge of Wesley's relationships with Wyndham's timeshare owners.

41.     Wyndham has intentionally and unlawfully interfered with Wesley's clients and prospective clients.

42.     As a proximate result of Wyndham's unlawful interference, Wesley's relationships with its existing and prospective clients have ended.

43.     Wyndham intentionally caused Wesley's business relationships with Wyndham timeshare owners to end.

44.     Moreover, Wyndham acted with improper motive and means in causing Wesley's relationships with Wyndham timeshare owners to end, including but not limited to, threats, intimidation, bribery, unfounded litigation, defamation, fraud,

misrepresentation, deceit, duress, undue influence, and unethical conduct.

45.    Wyndham's actions constitute unlawful interference with business relationships.

46.    As a result of Wyndham's unlawful conduct, Wesley has suffered damages in an amount to be proven at trial.

(Docket Entry No. 58, Defendants' Amended Answer and Counterclaim).

### 3. Procurement of Breach of Contract

For their counterclaim of procurement of breach of contract, Defendants allege the following:

48.    Wesley has contracts with its clients, specifically including Wyndham timeshare owners, to assist those clients in obtaining a rescission or cancellation of their timeshare contracts that have been induced by fraud and/or duress.

49.    Wyndham has knowledge of Wesley's contracts with Wyndham timeshare owners to breach their contracts with Wesley.

51.    Wesley's clients have in fact breached their contracts with Wesley as a proximate result of Wyndham's actions.

52.    Wyndham's actions constitute unlawful inducement of a breach of contract under common law and in violation of Tenn. Code Ann. § 47-50-109.

53.    As a result, Wyndham has suffered damages in an amount to be proven at trial.

(Docket Entry No. 58, Defendants' Amended Answer and Counterclaim).

### 4. Unfair Competition Claim

For their counterclaim of unfair competition, Defendants allege the following:

55.    Wyndham has engaged in tortious acts, including but not limited to, threats, intimidation, bribery, unfounded litigation, defamation, fraud, misrepresentation,

deceit, duress, undue influence, and unethical conduct.

56. Wyndham's tortious actions have deprived Wesley of customers and prospective customers.

57. Wyndham's actions constitute unfair competition.

58. As a result of Wyndham's unlawful actions, Wesley has been damaged in an amount to be proven at trial.

(Docket Entry No. 58, Defendants' Amended Answer and Counterclaim).

### 5. Declaratory Judgment

In support of their requests for declaratory judgment, Defendants allege the following:

60. Counter-Plaintiffs are entitled to a declaratory judgment pursuant to Tenn. Code Ann. § 29-14-103 declaring that Wyndham induced its timeshare owners who are clients of Wesley to enter into their timeshare contracts through fraud and/or duress.

61. Counter-Plaintiffs are entitled to a declaratory judgment pursuant to Tenn. Code Ann. § 29-14-103 that the Covenant Not to Solicit in McDowell's Salesperson Agreement with Wyndham expired on October 31, 2009, one year after his employment with Wyndham terminated.

62. Counter-Plaintiffs are entitled to a declaratory judgment pursuant to Tenn. Code Ann. § 29-14-103 that McDowell has not breached his Salesperson Agreement with Wyndham.

(Docket Entry No. 58, Defendants' Amended Answer and Counterclaim).

### 6. Uniform Trade Secrets Act Claim

For their counterclaim of violations under the Uniform Trade Secrets Act, Defendants allege

8

the following:

64. Wyndham has asserted its claim for misappropriation of trade secrets in bad faith.

65. Consequently, Counter-Plaintiffs are entitled to attorney's fees pursuant to Tenn. Code Ann. § 47-25-1705(1).

(Docket Entry No. 58, Defendants' Amended Answer and Counterclaim).

### 7. Tennessee Consumer Protection Act Claim

For their counterclaim of violations under the Tennessee Consumer Protection Act, Defendants allege the following:

67. Wyndham's claim for violation of the Tennessee Consumer Protection Act is frivolous, without legal or factual merit, and/or brought for the purpose of harassment. Counter-Plaintiffs are, therefore, entitled to all damages incurred as a result of defending such claim, including costs and reasonable attorney's fees pursuant to Tenn. Code Ann. § 47-18-109(c)(2).

(Docket Entry No. 58, Defendants' Amended Answer and Counterclaim).

### B. Conclusions of Law

As to the merits of the Plaintiff's motion to dismiss, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted)). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted factual inferences . . . and [c]onclusory allegations or legal conclusions

masquerading as factual allegations will not suffice." Tam Travel, Inc. v. Delta Airlines, Inc., 583 F.3d 896, 903 (6th Cir. 2009) (citations and quotation marks omitted).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Iqbal, 556 U.S. at 677 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. "A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. (citing Twombly, 550 U.S. at 555, 557).

> **To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"**

Iqbal, 556 U.S. at 678 (emphasis added).

The Supreme Court also laid out the underlying principles of this analysis:

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .

Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d,

at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> **In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.**

Id. at 678-79 (emphasis added).

"A motion under Rule 12(b)(6) is directed solely to the complaint itself . . . [.]" Sims v. Mercy Hosp. 451 F.2d 171, 173 (6th Cir. 1971). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." Armengau v. Cline, 7 Fed Appx. 336, 344 (6th Cir. 2001). "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. Id. (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)).

### 1. Defamation Claim

For a defamation claim under Tennessee law, a party "must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Hibdon v. Grabowski, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (citing Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999) (relying on Restatement (Second) of Torts § 580 B (1977))).

For such a claim, the Court should first determine "whether a statement is **capable** of a defamatory meaning." Battle v. A & E Tele. Networks, LLC, 837 F. Supp. 2d 767, 771 (M.D. Tenn.

2011) (citing Memphis Publ'g Co. v. Nicols, 569 S.W.2d 412, 419 (Tenn. 1978)). "If a court determines that the statement or communication is not defamatory, then dismissal of the action is appropriate; otherwise, it is for the jury to determine whether the statement was understood by its intended audience to be defamatory." Battle, 837 F. Supp. 2d at 771. The "'[a]llededly defamatory statements should be judged within the context in which they are made,' and given their usual meaning, 'as a person of ordinary intelligence would understand them in light of the surrounding circumstances.'" Id. (quoting Revis v. McClean, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000)).

Defendants contend that they properly pled a defamation claim with statements that are capable of being understood as defamatory and the merits of such claims are for a jury. (Docket Entry No. 70 at 3). In addition, Defendants contend,

> The purpose of Wyndham's letter is clearly to imply to Wyndham customers that Mr. McDowell, being a former employee of Vacation Ownership Group ("VOG"), is or was involved in the federal criminal charges pending against individuals related to VOG. Wyndham knows that this is false. There are no federal criminal charges pending, nor have there ever been any criminal charges pending, against Mr. McDowell nor any other VOG employee who worked within the Nashville office. Wyndham published these statements with knowledge of their falsity or with reckless disregard for the truth and knew it would be false and defamatory to Mr. McDowell and Wesley.
> . . .
> At this point in the litigation, Wyndham has produced no evidence whatsoever that any of Wesley's timeshare advocacy is improper. Wyndham has produced no such evidence because no such evidence exists. Wyndham knows that no such evidence exists because Wyndham brought identical claims against Mr. McDowell's former entity, Timeshare Advocacy International ("TAI") and discovered throughout that litigation that Mr. McDowell's behavior was not and is not improper. Furthermore, as the criminal indictment indicates, the criminal charge pending against the former principals of VOG are not related at all to actual timeshare cancellation. Instead, they are related to money laundering.
> . . .
> . . . calling Wesley a scam is a definitive statement regarding Wesley's activities. Again, Wyndham has no proof whatsoever – because there is no proof whatsoever – that Wesley is a fraudulent operation or that Wesley is, or has been, engaged in

12

deceptive acts or a deceptive operation. . . .

. . . Wyndham has provided no proof whatsoever that Wesley has generated even one complaint, let alone "a large volume of complaints." Further, Wyndham makes no qualification of what a "complaint" even is, but it is fair to say that a jury could find that Wyndham's statement could be inferred by readers to be defamatory. Wyndham makes dishonest claims in its Motion to Dismiss regarding the statements made by Wyndham. Wyndham has absolutely published false and defamatory information, with knowledge of its falsity and/or reckless disregard for the same, with the intent of harming Wesley and Mr. McDowell and, in fact, their defamation has significantly harmed the Defendants.

(Docket Entry No. 70, Memorandum at 3-6). Plaintiff contends that Plaintiff's opinions are not defamatory. (Docket Entry No. 69 at 4).

Here, Defendants submits a letter and email with allegedly defamatory statements. Both the letter and email reflect some suggestions that the Defendants may be involved in improper and possibly criminal activities as well as deceptive and fraudulent business practices. The Court concludes that the statements included in the Wyndham's letter and email are capable of defamatory meanings. Accordingly, the Court concludes that Defendants sufficiently state a counterclaim for defamation.

## 2. Intentional Interference with Business Relationships Claim

For a claim of intentional interference with business relationships under Tennessee law, a plaintiff must show:

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;

(2) the defendant's knowledge of that relationship and not mere awareness of the plaintiff's business dealings with others in general;

(3) the defendant's intent to cause the breach or termination of the business relationship;

(4) the defendant's improper motive or improper means; and finally,

(5) damages resulting from the tortious interference.

Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002). "[A] determination of whether a defendant acted 'improperly' or possessed an 'improper' motive is dependent on the particular facts and circumstances of a given case." Id.

The Tennessee Supreme Court held that "improper motive" requires "that the defendant's predominate purpose was to injure the plaintiff." Id. at n.4. The Tennessee Supreme Court provided examples of improper interference, including:

> those means that are illegal or independently tortious, such as violations of statute, regulation, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationships, and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

Id.

Plaintiff contends that Plaintiff's opinions expressed to the Wyndham owners did not interfere with any of Defendants' business relationships. (Docket Entry No. 69 at 8). Moreover, Plaintiff argues that "[o]ther than reciting the elements of the cause of action, [Defendant] has made no allegation that [Plaintiff] has knowledge of a specific relationship." Id. Yet, in their counterclaim, Defendants allege that Plaintiff's emails and letters were sent to their clients. Thus, Defendants argue that they have pled prospective and existing business relationships as well as both an improper motive and improper means of interference with Defendants' existing and potential business relationships. Defendants also allege that Plaintiff had knowledge of the business relationships and caused those relationships to end and Defendants to incur damages. With these allegations, the Court concludes that Defendants have sufficiently stated a counterclaim for intentional interference with

business relationships.

### 3. Procurement of Breach of Contract Claim

For Defendants' counterclaim for procurement of breach of contract, Tennessee law requires that "1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and 7) there must have been damages resulting from the breach of contract." Myers v. Pickering Firm, Inc., 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997).

Plaintiff contends that the Defendants did not allege any facts in support of their allegations. (Docket Entry No. 69 at 8). Defendants contend that they "have properly pled that they have contracts with Wyndham owners, that Wyndham has knowledge of the same, and that Wyndham has maliciously and intentionally induced their owners to breach contracts with Wesley. At a minimum, Defendants attached the two exhibits to their counterclaim, which, as Wyndham states, "warn" customers not to work with Wesley." (Docket Entry No. 70 at 8).

Here, Defendants allege the existence of contracts, Plaintiff's knowledge of the contracts, Plaintiff's intent to maliciously induce a breach of contract, a breach of contract, and damages as a result of that breach. In support of their allegations, Defendants submitted letters reflecting Plaintiff's acts to induce a breach of contract by informing Wyndham customers that Wesley Financial Group "may also be involved in improper cancellation services." (Docket Entry No. 59-1). The Court concludes that Defendants state a counterclaim for procurement of breach of contract.

### 4. Unfair Competition Claim

For a claim of unfair competition under Tennessee law, "[a] plaintiff must prove that: (1) the

defendant engaged in conduct which 'passed off' its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization." Sovereign Order of St. John of Jerusalem, Inc. v. Grady, 119 F.3d 1236, 1242 (6th Cir. 1997).

Defendants contend that their factual allegations of Wyndham's engaging in multiple torts, including threatening in and engaging in frivolous litigation and sending defamatory letters, provide sufficient facts to state a claim for unfair competition. (Docket Entry No. 70 at 9). As to Defendants' unfair competition claim, Plaintiff contends that "Defendants make no allegations that [Plaintiff] is 'passing off' its own products as being [Plaintiff's] products. Likewise Defendants' allegations do not include any mention that they possess confidential information or that [Plaintiff] is exploiting that confidential information." (Docket Entry No. 69 at 10).

Defendants merely allege that Wyndham engaged in tortious acts that deprived Defendants of its current and prospective customers. Here, Defendants fail to allege any facts that would sufficiently state a claim for unfair competition under Tennessee law. Thus, the Court concludes that Defendants' allegations of unfair competition fail to state a claim.

### 5. Declaratory Judgment

As to Defendants' request for declaratory judgment, the Tennessee Declaratory Judgment Act provides:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determine any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations

16

thereunder.

Tenn. Code. Ann. § 29-14-103.

To bring an action for declaratory judgment under Tennessee law, an "actual 'case' or 'controversy' is required." Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 837 (Tenn. 2008). Yet, a present injury is not required. Id. "A bona fide disagreement must exist; that is, some real interest must be in dispute. Courts still may not render advisory opinions based on hypothetical facts." Id. at 838 (citing Goetz v. Smith, 278 S.W. 417, 418 (Tenn. 1925) and Third Nat'l Bank v. Carver, 218 S.W.2d 66, 69 (Tenn. 1948)).

Defendants request declaratory judgment on three grounds: (1) that Wyndham induced its timeshare owners, who are also Wesley clients, to enter into their timeshare contracts through fraud and/or duress; (2) that the Covenant Not to Solicit in McDowell's Salesperson Agreement with Wyndham expired on October 31, 2009, one year after his employment with Wyndham terminated; and (3) that McDowell has not breached his Salesperson Agreement with Wyndham. (Docket Entry No. 58 at ¶ 60-61).

Defendants contend that they are entitled to seek relief from the Court because if the Court finds that the Wyndham contracts were void as a result of fraudulent inducement, then Wyndham's claims against Defendants would fail. (Docket Entry No. 70 at 10). In addition, Defendants assert that enforcement of the Covenant Not to Solicit is presented by Plaintiff's allegations that Defendants breached their sales agreement by soliciting Wyndham employees and owners to Wyndham's detriment. Id.

Plaintiff requests that "Defendants' request for declaratory judgment would force this Court to issue advisory opinions or opine on issues so broad as to prevent fair adjudication of Defendants'

17

purported claims." (Docket Entry No. 69 at 10). Plaintiff contends that Defendants do not have any standing to seek declaratory judgment regarding contracts between Plaintiff and Plaintiff's timeshare owners. (Docket Entry No. 69 at 11). Plaintiff asserts that Defendants do not even plead that they are parties to the contracts at issue. Id. Moreover, Plaintiff contends that Defendants fail to meet the case and controversy requirement to have standing as Defendants merely seek an advisory opinion. Id. at 12.

The Court concludes that the Defendants actually seek judgment that Wyndham induced its timeshare owners, Wesley clients, into timeshare contract by duress and/or fraud and that McDowell did not breach the Covenant Not to Solicit. These are disputed factual issues and inappropriate for declaratory judgment. See Woodruff v. Fort Sanders Sevier Med. Ctr., No. E2007-00727-COA-R3-CV, 2008 WL 148951, at *3 (Tenn. App. Ct. Jan. 16, 2008) ("declaratory judgments are not appropriate where an investigation of disputed facts must necessarily be determined") (citations omitted). The Court also concludes that the Defendants have not alleged sufficient facts reflecting a real interest in Wyndham's contracts with its timeshare owners. Defendants also are not entitled to declaratory judgment regarding the breach of expiration of McDowell's Covenant Not to Solicit in his Salesperson Agreement in light of the pending state court litigation. Thus, the Court concludes that Defendants' counterclaim fails to set forth an appropriate basis for declaratory judgment.

### 6. Uniform Trade Secrets Act Claim

Under Tennessee law, the four elements for misappropriation of a trade secret are: "(1) the existence of a trade secret; (2) communication of the trade secret to the defendant while in a position of trust and confidence; (3) defendant's use of the communicated information; and (4) resulting detriment to the plaintiff. Straienko v. Cordis Corp., 429 F.3d 529, 600 (6th Cir. 2005). The Uniform

Trade Secrets Act provides for reasonable attorneys' fees to the prevailing party when:

> (1) A claim of misappropriation is made in bad faith,

> (2) A motion to terminate an injunction is made or resisted in bad faith, or

> (3) Willful and malicious misappropriation exists.

Tenn. Code Ann. § 47-25-1705(1).

An award of attorneys' fees and expenses under this section requires a finding of subjective bad faith. Tennessee has not defined "bad faith" under the attorneys' fees provision, but "other States have concluded, . . . that bad faith 'requires objective speciousness of the plaintiff's claim . . . and . . . subjective bad faith in bringing or maintaining the claim.'" Degussa Admixtures, Inc. v. Burnett, 277 Fed. Appx. 530, 534 (6th Cir. 2008) (affirming the district court's award of attorneys' fees to the prevailing party when the plaintiff failed to establish more than the existence of generalized trade secrets and the employee's knowledge of them); see also Dana Ltd. v. Am. Axle & Mfg Holdings, Inc., No. 110CV450, 2012 WL 2524008, at *9 (W.D. Mich. June 29, 2012) ("'[a] party alleging trade secret misappropriation must particularize and identify the purportedly misappropriated trade secrets with specificity.'"). But see McKesson Medical-Surgical, Inc. v. Micro Bio-Medics, Inc., 266 F. Supp. 2d 590, 597 (E.D. Mich. 2003) (denying defendant's request for attorneys' fees because no clear evidence that Plaintiffs took action for improper purposes amounting to bad faith).

Plaintiff argues that Defendant fails to "plead that it possesses trade secrets or that [Plaintiff] misappropriated anything." (Docket Entry No. 69 at 14). Defendant contends that they "have properly pled that Wyndham brings this claim in bad faith" and "it is their position that this issue has been previously litigated and that the jury returned a verdict stating that Mr. McDowell did not learn any trade secreted information while employed by Wyndham and therefore could not and did not

misappropriate any trade secrets." (Docket Entry No. 70 at 12). Although the Defendants properly pled a claim for attorneys fees under the Uniform Trade Secrets Act their claim for attorneys' fees is premature. Yet, the Court should not dismiss Defendants' counterclaim until the merits of Plaintiff's claim under the Uniform Trade Secrets Act is decided. The Court concludes that the Defendants sufficiently state a claim under the Uniform Trade Secrets Act.

### 7. Tennessee Consumer Protection Act Claim

The Tennessee Consumer Protection Act provides for attorneys' fees for any frivolous claim brought under that section:

> In any private action commenced under this section, upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorneys' fees and costs.

Tenn. Code Ann. § 47-18-109(e)(2). The Court has the discretion to award attorneys' fees to the prevailing party upon making a specific finding of frivolity. Harvey v. Covington, No. M2000-01184-COA-R3-CV, 2001 WL 120733, at *5 (Tenn. App. Ct. Feb. 14, 2001). The Tennessee appellate court has stated:

> [T]he provision for attorney fees found in Tenn. Code Ann. § 47-18-109(e)(2) is designed to discourage consumers from using the Act to file frivolous or baseless claims. It is not intended to punish plaintiffs who can demonstrate wrongful acts on the part of defendants, but who are unable to prevail on their claims for other reasons. Too strict an application of this subsection would result in a "winner take all" situation, regardless of the circumstances, that would undermine the purpose of protecting the consumer. We therefore do not interpret the statutory term "without legal or factual merit" to mean without sufficient merit to prevail, but rather as so utterly lacking in an adequate factual predicate or legal ground as to make the filing of such a claim highly unlikely to succeed.

Glanton v. Bob Parks Realty, No. M2003-01144-COA-R3-CV, 2005 WL 1021559, *9 (Tenn. Ct.

20

App. Oct. 24, 2005).

Plaintiff contends that Defendants do not plead any elements to establish its claim. (Docket Entry No. 69 at 14). Defendants contend that they have sufficiently pled that Plaintiffs filed a claim under the Tennessee Consumer Protection Act in bad faith and accordingly, Defendants are entitled to an award of attorneys' fees and costs under the statute. (Docket Entry No. 70 at 12).

The Court concludes that a dismissal of Defendants' counterclaim under the Tennessee Consumer Protection Act is premature. Plaintiff has asserted claims under this Act. The Court has yet to evaluate the merits or frivolity of Plaintiff's claims under the Tennessee Consumer Protection Act. See Fulmer v. Sinks, 1990 WL 34937, No. 89-343-II, at *7 (Tenn. Ct. App. Mar. 30, 1990) ("In view of our holding that the plaintiffs are entitled to trial on that portion of their complaint which alleges fraudulent misrepresentation, the dismissal of [defendant's] counterclaim was improvident. Until such time as the trial court has heard the matter to a conclusion, it cannot know whether the plaintiff's claim is 'without legal or factual merit, or brought for the purpose of harassment' and until such time as the trial court is able to determine this fact, the counterclaim should not be dismissed."). Thus, the Court concludes that any dismissal of the Defendants' counterclaim under the Tennessee Consumer Protection act would be premature.

## C. Conclusion

Thus, the Court concludes that Plaintiff's motion to dismiss Defendants' counterclaims should be granted in part and denied in part.

An appropriate Memorandum is filed herewith.

**ENTERED** this the _28_ day of February, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court